IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**TECHNICAL SECURITY INTEGRATION, INC.**,

       Plaintiffs,

  v.

**S & S ELECTRICAL CONTRACTORS, LLC, and COREY THARP**,

       Defendants.

No. 3:13-cv-00636-MO

OPINION AND ORDER

**MOSMAN, J.**,

Nonparty movants Spirit Mountain Gaming, Inc. ("Spirit Mountain"), and Steve Bobb[1] move this Court [41] to quash a third-party subpoena served by plaintiff Technical Security Integration, Inc. ("TSI"). Spirit Mountain argues that enforcement of the subpoena is barred by tribal sovereign immunity. TSI filed a response [44], and Spirit Mountain replied [47]. Because I find that enforcement of the subpoena would intrude upon tribal immunity, I GRANT the motion [41] and quash TSI's subpoena.

---

[1] For brevity's sake, when discussing the nonparty movants' arguments, I refer to Spirit Mountain and Mr. Bobb collectively as "Spirit Mountain."

1 – OPINION AND ORDER

## BACKGROUND

Spirit Mountain does business under the assumed name Spirit Mountain Casino. (Mr. Greene's Decl. [41-3] at ¶¶ 3–4.) In turn, Spirit Mountain is a wholly owned governmental corporation of the Confederated Tribes of the Grand Ronde Community of Oregon (the "Tribes"), chartered under the laws of the Tribes and pursuant to an interstate gaming compact. (*Id.* at ¶ 4; Mr. Greene's Decl. Ex. 1 [41-3] at 1–2.) The Tribes are a federally recognized Indian tribe. 25 U.S.C. § 713b; Dep't of the Interior, Indian Entities Recognized and Eligible To Receive Services from the United States Bureau of Indian Affairs, 78 Fed. Reg. 26384-02, 26385 (May 6, 2013). As Spirit Mountain's Surveillance Director, Mr. Bobb communicates with both TSI and Defendant S & S Electrical Contractors, LLC ("S&S"), about electrical and programming services they provide to the Surveillance Department. (Mr. Bobb's Decl. [41-2] at ¶¶ 5–8.)

TSI entered into an employment agreement with Defendant Corey Tharp in April of 2011. (Compl. [1] at ¶ 5.) The agreement contained a one-year non-competition provision preventing Mr. Tharp from transacting with or soliciting any TSI customer or prospective TSI customer in the event of his termination. *Id.* at ¶ 7. One such customer is Spirit Mountain Casino. *Id.* at ¶ 9. In November of 2012, TSI terminated Mr. Tharp pursuant to a severance agreement. *Id.* at ¶ 8. Now, TSI alleges that Mr. Tharp breached the employment agreement's non-competition provision by dealing with TSI customers, including Spirit Mountain Casino. *Id.* at ¶ 9. TSI also alleges that S&S intentionally interfered with the non-competition agreement by employing Mr. Tharp. *Id.* at ¶ 13.

Defendants deny that Mr. Tharp breached the non-competition agreement and that S&S intentionally interfered with it by employing him. (Answer [12] at ¶¶ 9, 13.) In addition, Mr.

Tharp asserts three counterclaims of defamation against TSI. *Id.* at ¶¶ 22–35. He claims that President and CEO of TSI Craig Swankosky falsely told Mr. Bobb "that Mr. Tharp was terminated because he refused to work" and engaged in other misconduct. *Id.* at ¶ 24. He alleges further that Mr. Swankosky told Mr. Bobb and Tracy Howerton, Surveillance Manager of Spirit Mountain Casino, that TSI terminated Mr. Tharp "for time management issues, project management issues, and for falsifying time sheets." *Id.* ¶ 28. Mr. Swankosky's allegedly false statements to both Spirit Mountain employees also include that Mr. Tharp was under investigation "for grand theft, and would probably do jail time," because he stole "a handful of cameras and a small digital recording system" from TSI's office. *Id.*

In March of 2013, before TSI filed this action, Mr. Tharp sent an email from an S&S email address to Mr. Bobb and Mr. Howerton. (Ms. Sugawa-Fujinaga's Decl. Ex. 1 [45-1] at 1–2.) He posed six questions to Mr. Bobb and Mr. Howerton, asking whether he had ever solicited Spirit Mountain Casino's business and whether he had ever shared any confidential information regarding TSI or maligned TSI in any way. *Id.* at 1. Mr. Howerton responded, using a Spirit Mountain email address. *Id.* The record does not indicate whether Mr. Bobb responded.

On September 27, 2013, TSI served Mr. Bobb with a subpoena for deposition testimony. (Mr. Bobb's Decl. [41-2] at ¶ 9.) The subject of the testimony TSI seeks is unclear, but Spirit Mountain's memorandum indicates that it would concern Mr. Tharp's defamation counterclaims. (*See* Mem. in Supp. [41-1] at 3.) TSI has issued a subpoena for Mr. Howerton as well, but is withholding service pending resolution of the present motion. (Resp. [44] at 2 n.1.)

Spirit Mountain moved to quash [41] TSI's subpoena on October 3, 2013. It argues that, because Mr. Bobb is an employee of a tribal corporation, the Tribes's sovereign immunity shields him from federal judicial process in this action.

3 – OPINION AND ORDER

## DISCUSSION

Spirit Mountain argues that the Tribes's immunity shields Spirit Mountain's employees from subpoenas seeking testimony concerning matters within the scope of their employment. TSI argues that tribal immunity does not shield the Tribes from enforcement of federal subpoenas at all, and in the alternative that Mr. Howerton waived the Tribes's immunity.

### I.   Whether the Tribes's Immunity Shields Mr. Bobb from Enforcement of TSI's Subpoena

The sovereign immunity of the Indian tribes is "settled law." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756 (1998). An Indian tribe is "subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Id.* at 754. Tribal immunity applies to all activities of the tribe, whether governmental or commercial. *Id.* at 754–55. Only Congress may abrogate or reduce the scope of tribal immunity. *Id.* at 759.

That tribal immunity extends to employees of tribal corporations when acting in their official capacity and within the scope of their authority is settled in the Ninth Circuit. *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 727 (9th Cir. 2008). Two circuits, including the Ninth, have held that tribal immunity shields tribes and their agencies from federal subpoenas generally. *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1105–06 (8th Cir. 2012); *United States v. James*, 980 F.2d 1314, 1319 (9th Cir. 1992). Tribal immunity therefore bars enforcement of federal subpoenas against tribal employees as well, at least to the extent that they seek materials or testimony concerning matters within the scope of the employees' employment with the tribe.

> **A.      *The Tribes's Sovereign Immunity Applies to Spirit Mountain and Its Employees.***

"When the tribe establishes an entity to conduct certain activities, the entity is immune if it functions as an arm of the tribe." *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006). In turn, a tribe's casino functions as an arm of the tribe if the tribe wholly owns and manages the casino and is its sole economic beneficiary. *Id.* at 1046–47; *Cook*, 548 F.3d at 726.

As immunity applies to a tribe's gaming operation, so does it extend to the operation's employees for actions "in their official capacity and within the scope of their authority." *Cook*, 548 F.3d at 727. Immunity for tribal officials and employees is necessary to "protect[] an Indian tribe's treasury and prevent[] a plaintiff from bypassing tribal immunity merely by naming a tribal official." *Id.* Employees of casinos wholly owned and operated by a tribe are therefore entitled to immunity. *See id.* at 721, 727 (describing tribal casino employees as employees of the tribe).

Here, Spirit Mountain operates as an arm of the Tribes. The Tribes authorized Spirit Mountain's incorporation in a resolution dated February 10, 1995. (Mr. Greene's Decl. Ex. 1 [43-1] at 1–3.) Spirit Mountain has only one shareholder, itself a tribal corporation wholly owned by the tribe. *Id.* at 1–2. As in *Allen*, then, the Tribes wholly own and operate Spirit Mountain, and the economic benefit of its activities inures only to the Tribes. Tribal immunity therefore extends to Spirit Mountain's activities and to those of its employees in the scope of their employment.

> **B.      *Tribal Immunity Bars Enforcement of a Subpoena Seeking Testimony from a Tribal Employee Concerning Matters Within the Scope of His Employment.***

"The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or . . .

restrain the Government from acting, or . . . compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (internal citations omitted). Two circuits have concluded that enforcement against a tribe of a third-party subpoena encroaches upon the tribe's immunity. The Ninth Circuit reached that conclusion in *James*, rejecting the subpoenaing party's argument that sovereign immunity does not shield a tribe from "a valid subpoena from a federal district court." 980 F.2d at 1319. In *James*, the defendant was convicted of aggravated sexual assault on an Indian reservation. *Id.* at 1316. Before his conviction, he had served a subpoena on a tribal agency seeking purportedly exculpatory evidence. *Id.* at 1319. The Ninth Circuit held that the district court properly quashed the subpoena on immunity grounds, finding that Congress, in granting jurisdiction over certain crimes committed on Indian reservations, did not intend also to subject the tribes to judicial process. *Id.*

The Eighth Circuit expanded on *James* in *Alltel*, concluding that a subpoena directed at a tribe or tribal employee is the equivalent of a "suit" against the tribe for immunity purposes. 675 F.3d at 1105. It reasoned that subpoenas served on a nonparty tribe "command a government unit to appear in federal court and obey whatever judicial discovery commands may be forthcoming." *Id.* at 1103. In reaching this conclusion, the court relied on decisions of other circuits holding that a state court (or a federal court with limited jurisdiction on removal from state court) could not enforce a subpoena against a federal agency. *Id.* (citing *EPA v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir. 1989)). It concluded that, like the subpoenas against federal agencies in *EPA* and *Boron Oil*, subpoenas against a tribe necessarily intrude upon the tribe's administration. *Id.* at 1104. Tribal immunity therefore shields tribes from enforcement of third-party subpoenas. *Id.*

The Eighth Circuit distinguished two other opinions, including one from the Ninth Circuit, that allowed enforcement of subpoenas against federal agencies. Those opinions do not detract from the principle espoused in *Alltel* because they rest on the federal government's voluntary submission to federal judicial process. In *Linder v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001), the D.C. Circuit concluded that Congress in the Administrative Procedures Act waived the federal government's sovereign immunity to federal court subpoenas. *Id.* at 181. It reasoned that a subpoena is equivalent to an action "seeking relief other than money damages," and therefore falls within 5 U.S.C. § 702's waiver of immunity. *Id.* Similarly, in *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994), the Ninth Circuit concluded that § 702 represented a congressional waiver of immunity. *Id.* at 779 n.9. Congress has enacted no measure analogous to § 702 to abrogate the Indian tribes' immunity to third-party subpoenas.

TSI attempts to dodge the weight of this authority by citing *United States v. Juvenile Male 1*, 431 F. Supp. 2d 1012 (D. Ariz. 2006). In this case, the government charged a juvenile defendant with aggravated sexual abuse of a minor on an Indian reservation. *Id.* at 1013. The defendant served subpoenas duces tecum on agencies of the Navajo Nation for records that he contended were exculpatory. *Id.* The Navajo Nation initially refused to comply on immunity grounds, and ultimately moved to quash the District of Arizona's order to show cause why various Navajo officials should not be held in contempt. *Id.* at 1013–14. The court declined to quash the order, holding that a federal criminal defendant's subpoena is enforceable against an Indian tribe and its agencies. *Id.* at 1019.

The court gave three reasons for concluding that sovereign immunity did not shield the Navajo Nation from the defendant's subpoenas. Two of these reasons fail to account for differences between tribal sovereign immunity and the sovereign immunity of the state and

7 – OPINION AND ORDER

federal governments, and the third, while valid, applies only in criminal cases. Accordingly, I will not follow *Juvenile Male 1* here.

First, the District of Arizona reasoned that, because federal subpoenas are effective against state and federal agencies, they must also be effective against tribal agencies. *Id.* at 1016. It cites *Exxon Shipping* for the proposition that the federal government's sovereign immunity does not protect it from compliance with a federal subpoena, *id.* (citing 34 F.3d at 778), and remarks that "[i]t would be strange indeed if a federal subpoena were operative against the greater sovereign and its officers but not the lesser," *id*. The court fails to note, as the Ninth Circuit noted in *Exxon Shipping*, that Congress has waived federal agencies' immunity to judicial process in at least some actions. 34 F.3d at 778, 779 n.9. Congress has subjected tribal immunity to no such waiver.

The court in *Juvenile Male 1* also notes that a state's sovereign immunity does not shield its agencies from federal process. 431 F. Supp. 2d at 1016. However, this reasoning fails to account for the fact that the states voluntarily surrendered some of their sovereign immunity to their sister states and to the federal government when they adopted the Constitution. *Blatchford v. Native Village of Noatak and Circle Village*, 501 U.S. 775, 781–82 (1991). Unlike the states, Indian tribes were not represented at the Constitutional Convention and were not part of this mutual concession. *Id.* This is one aspect in which the scopes of tribal immunity and state sovereign immunity are "not congruent." *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986). Analogy to federal and state sovereign immunity and their interplay shed little light on the scope of tribal immunity.[2]

---

[2] The Supreme Court's reasoning in *Blatchford* that the Indian tribes did not cede their sovereignty as the states did might seem to contradict its reasoning in an earlier case that the tribes' immunity "passed to the United States for their benefit, as their tribal properties did." *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 512 (1940). However, the tribes' sovereignty having "passed" into the United States's protection is not the same as the tribes

8 – OPINION AND ORDER

Second, whatever may be the effect of immunity on subpoenas, the District of Arizona reasoned that "'tribal sovereignty does not extend to prevent the federal government from exercising its superior sovereign powers.'" *Juvenile Male 1*, 431 F. Supp. 2d at 1017 (quoting *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1459 (9th Cir. 1994)). The court correctly noted that "tribal immunity has no application to claims made by the United States." *Id.*; *see also EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1075 (9th Cir. 2001) (holding that tribal immunity does not extend to "suits brought by the federal government"). This is because such suits represent "'overriding interests of the National Government'" to which tribal immunity must yield. *United States v. White Mountain Apache Tribe*, 784 F.2d 917, 920 (9th Cir. 1986) (quoting *Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 571 (1983)). No such overriding interests exist in private civil litigation to which a tribe is not a party. *Alltel*, 675 F.3d at 1105. That tribal immunity yields before a federal agency's lawsuit does not require that a tribe submit to a private party's federal subpoena.

Third, the District of Arizona reasoned that the combination of Congress's grant to the district courts of jurisdiction over major crimes committed on reservations and a criminal defendant's Sixth Amendment right to compulsory process require that tribes comply with subpoenas in federal criminal prosecutions. *Juvenile Male 1*, 431 F. Supp. 2d at 1017. It distinguished *James* on this basis, because the defendant there did not argue that his constitutional rights should overcome tribal immunity. *Id.* at 1017–18. The Supreme Court has previously held that a non-Indian criminal defendant's constitutional rights[3] are among the overriding federal interests that prevail over tribal immunity. *Washington v. Confederated*

---

having ceded their sovereignty. Instead, the tribes' sovereignty is committed to Congress, and Congress alone may abrogate it or limit its extent. *See, e.g.*, *Okla. Tax Com'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 510 (1991) (retaining tribal sovereign immunity because Congress had not abrogated it).

[3] The Indian Civil Rights Act of 1968 requires tribal governments to guarantee many of these rights to members of the tribe. 25 U.S.C. § 1302; *see also Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 194, 195 n.6 (1978).

9 – OPINION AND ORDER

*Tribes of Colville Indian Reservation*, 447 U.S. 134, 153 (1980) (citing *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 208–10 (1978)). That tribal agencies must comply with a federal criminal defendant's subpoena flows naturally from this precedent. Similarly, the government's interest in prosecuting major crimes on Indian reservations overrides a tribe's immunity to a subpoena from a grand jury. *See In re Long Visitor*, 523 F.2d 443, 446–47 (8th Cir. 1975) (holding that tribal sovereign immunity did not shield members of a tribe from enforcement of a federal grand jury subpoena). However, as noted above, no such overriding interest applies in private civil litigation. *Alltel*, 675 F.3d at 1105.

TSI also cites *Allen v. Woodford*, 543 F. Supp. 2d 1138 (E.D. Cal. 2008). There, the court held that neither the Eleventh Amendment nor sovereign immunity shielded a state agency from compliance with a federal third-party subpoena. *Id.* at 1142–44. As noted above, however, the present scope of the states' sovereign immunity is not analogous to that of the tribes because the latter did not voluntarily cede their sovereignty by adopting the Constitution. That state agencies must submit to federal judicial process does not imply that tribes must do so in every instance.

The court in *Allen* also reasoned that a subpoena directed at a sovereign, as in *James*, is properly quashed, while a subpoena may be enforced against an employee of a sovereign. *Id.* at 1144. Even if correct, this principle cannot apply to tribes because tribal immunity extends to tribal employees acting within the scope of their employment. *Cook*, 548 F.3d at 727.

Finally, TSI attempts to distinguish *James* and *Alltel* on their facts. (Resp. [44] at 4–5.) TSI notes that those cases concerned subpoenas duces tecum, which would have compelled tribal agencies to compile and produce materials in their possession. *Id.* at 4. The subpoena served on Mr. Bobb, however, would not require the Tribes to produce any materials, but would only

10 – OPINION AND ORDER

require a tribal employee to testify as to facts within his personal knowledge. *Id.* at 4–5. TSI asserts accordingly that its subpoena does not implicate the Tribes's sovereign immunity. *Id.*

*James* and *Alltel* do not support the distinction that TSI attempts to draw. These cases did not limit their reasoning to subpoenas duces tecum, but concluded that a subpoena of any kind intrudes on a tribe's immunity by compelling the tribe to act. A subpoena that requires a tribal employee to testify about matters within the scope of his employment compels the tribe to act in much the same manner as a subpoena that requires a tribal official to produce tribal records. To the extent that TSI's subpoena seeks testimony from Mr. Bobb concerning matters within the scope of his role as Spirit Mountain's Surveillance Director, tribal immunity bars its enforcement.

        **C.**    *The Parties Do Not Dispute That TSI's Subpoena Seeks Testimony Concerning Matters Within the Scope of Mr. Bobb's Employment.*

Spirit Mountain asserts that any testimony Mr. Bobb could provide in this action would concern "communications which occurred during his business dealings" with TSI and S&S. (Mem. in Supp. [41-1] at 2.) His statements therefore would necessarily regard "information obtained in his official capacity as Surveillance Director for Spirit Mountain." *Id.* TSI's only response to these assertions is to state that whether Mr. Bobb obtained the information TSI seeks within the scope of his employment "is not relevant to the analysis here." (Resp. [44] at 5.) That TSI's subpoena concerns matters within the scope of Mr. Bobb's employment for the Tribes, then, is undisputed for purposes of this motion. I hold therefore that the Tribes's sovereign immunity shields Mr. Bobb from compliance with TSI's subpoena.

**II.**    <u>Mr. Howerton Has Not Waived Spirit Mountain's Immunity.</u>

Waivers of immunity, including tribal immunity, "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (quoting

11 – OPINION AND ORDER

*United States v. Testan*, 424 U.S. 392, 399 (1976)).   The party seeking to overcome immunity bears the burden of proving waiver.  *Ingrassia v. Chicken Ranch Bingo and Casino*, 676 F. Supp. 2d 953, 956–57 (E.D. Cal. 2009).  Where a tribal agency voluntarily supplies documents to a party to active litigation, it waives its immunity to judicial process concerning other materials in its possession.  *James*, 980 F.2d at 1320.  A tribal agency "cannot selectively provide documents and then hide behind a claim of sovereign immunity when [a party] requests different documents."  *Id.*

TSI argues that Mr. Howerton waived tribal immunity when he voluntarily responded to Mr. Tharp's email.[4]  (Resp. [44] at 5.)  Spirit Mountain rejoins that neither Mr. Bobb nor Mr. Howerton was authorized to waive the Tribes's immunity.  (Reply [47] at 4–5.)  Tribal officials may not waive immunity unilaterally.  *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 513 (1940).  Spirit Mountain's Articles of Incorporation, Article VIII section 1(o), provide that only the corporation's board of directors may waive tribal immunity as it applies to Spirit Mountain's activities.  (Ms. Biesak's Decl. Ex. 1 [47-1] at 3.)  Without the board's authorization, then, Mr. Howerton's response to Mr. Tharp's email could not waive immunity.  Moreover, unlike *James*, Mr. Howerton's response was sent before this action was filed.  (Reply [47] at 5.)  Spirit Mountain argues that it cannot be deemed to have consented to process where neither employee knew that a lawsuit was forthcoming.  *Id.*

Spirit Mountain is correct.  Mr. Howerton has not waived the Tribes's immunity to TSI's subpoena.  The critical difference between this case and *James* is the lack of an active lawsuit when Mr. Howerton replied to Mr. Tharp's email.  Absent a lawsuit, or knowledge that a lawsuit is forthcoming, no danger exists that a tribal agency or employee will voluntarily provide

---

[4] In fact, TSI argues that both Mr. Bobb and Mr. Howerton waived immunity by replying to Mr. Tharp's email. (Resp. [44] at 5.)  I find no evidence in the record suggesting that Mr. Bobb replied, however.

12 – OPINION AND ORDER

information to one party and assert immunity to withhold it from another. Because TSI has not shown that Mr. Howerton knew that TSI or Mr. Tharp was likely to file suit, the unfairly selective production that troubled the Ninth Circuit in *James* has not happened here.

## CONCLUSION

TSI's subpoena seeks testimony concerning matters within the scope of Mr. Bobb's employment as Surveillance Director for Spirit Mountain, a tribal gaming operation wholly owned and operated by the Tribes. Moreover, the Tribes's immunity to enforcement of the subpoena has not been waived. Spirit Mountain's motion to quash [41] the subpoena is therefore GRANTED, and the subpoena served on Mr. Bobb on September 27, 2013, in the above-captioned matter is hereby quashed.

IT IS SO ORDERED.

DATED this   10th   day of December, 2013.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge