IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**TECHNICAL SECURITY
INTEGRATION, INC.**,

           Plaintiffs,

     v.

**S & S ELECTRICAL CONTRACTORS,
LLC, and COREY THARP**,

           Defendants.

No. 3:13-cv-00636-MO

OPINION AND ORDER

**MOSMAN, J.**,

      Defendants S & S Electrical Contractors, LLC ("S&S"), and Corey Tharp move [64] for summary judgment on each of the claims in Plaintiff Technical Security Integration, Inc.'s ("TSI") Amended Complaint [46], as well as on their own five counterclaims. For its part, TSI moved [69] for summary judgment on Defendants' counterclaims and on its own claim for conversion. On April 25, 2014, I heard oral argument on the parties' motions. The following brief opinion sets out my rulings.

1 – OPINION AND ORDER

I.  **Defendants' Motion for Summary Judgment**

Defendants' motion is DENIED with respect to TSI's claim of breach of contract. Because Mr. Tharp received no more than increased compensation in exchange for entering the 2011 employment agreement, he did not obtain a bona fide advancement. Nonetheless, clause 8.a is enforceable under section 653.295(4)(b) of the Oregon Revised Statutes. (*See* Am. Compl. Ex. 1 [46-1] at 2.) Like its restrictions on "soliciting or working on" the premises of active TSI customers, the clause's prohibition on "contacting" those customers must be understood to refer to efforts to secure business from them. The three prohibited activities listed in clause 8.a therefore comprise a "covenant not to . . . solicit or transact business with customers" of TSI within section 853.295(4)(b). Further, a reasonable jury might conclude that Mr. Tharp solicited or transacted business with Spirit Mountain Casino ("Spirit Mountain") and Three Rivers Casino ("Three Rivers") after TSI terminated his employment, and that these efforts caused the two casinos to sign service and upgrade contracts for 2013 with S&S instead of TSI. Clause 8.b's restrictions on "[c]ontacting or soliciting" prospective TSI customers, however, fall outside section 853.295(4)(b)'s scope. Clause 8.b therefore is an unenforceable noncompetition agreement.

Defendants' motion is DENIED as to TSI's claim of intentional interference with contractual advantage. A genuine dispute of material fact exists as to each element. TSI's negotiations with Spirit Mountain and Three Rivers for the 2013 service contracts gave rise to a valid business expectancy. A reasonable jury may find that S&S's efforts to secure those contracts amounted to intentional interference. Of course, S&S is a third party to TSI's prospective relationship with the casinos. As will be explained more fully, a reasonable jury may also find that Mr. Tharp misappropriated trade secrets in projecting the cost of these

2 – OPINION AND ORDER

contracts. S&S's knowing use of this information in negotiating with the casinos would amount to an improper means of interference. Because of the small number of companies active in the surveillance and security industry, a jury may reasonably infer that, but for S&S's interference, the casinos may have swallowed their displeasure with Mr. Tharp's termination and continued to deal with TSI. In that event, the jury may reasonably find that S&S's interference damaged TSI in the amount of its lost profits on the contracts.

Defendants' motion is GRANTED as to TSI's conversion claim. At the hearing, TSI argued that Mr. Tharp's deletion of the emails and customer quotes from his former TSI laptop worked a conversion not because it deprived TSI of access to that data, but because it required TSI to undertake significant effort in order to recreate the full understanding of the data that Mr. Tharp had when he left TSI. If TSI's theory were credited, then every former employee who failed to leave the proprietary information in his possession in a manner that made its full meaning and import instantly apparent to his former employer would be liable for conversion. Such a rule would impose too great a burden on those who seek to change employers. Even if the record supported the conclusion that Mr. Tharp should be made to pay the data's full market value, moreover, TSI has presented no evidence to suggest what that value might be.

Defendants' motion is DENIED as to TSI's claim of misappropriation of trade secrets. As required by section 646.461(4) of the Oregon Revised Statutes, a reasonable jury could conclude that TSI derived economic value from the amounts it charged Spirit Mountain and Three Rivers on the casinos' service contracts, and that it made reasonable efforts to keep those amounts secret from competitors. A reasonable jury also could infer that Mr. Tharp used pricing data from Spirit Mountain's maintenance contract in preparing his December 8, 2012, projections for S&S. Both that S&S did not yet have access to pricing information as a Synectics

3 – OPINION AND ORDER

reseller and that Mr. Tharp was able to estimate the cost of potential Spirit Mountain projects to the nearest cent support this conclusion. In turn, a reasonable jury could determine that Mr. Tharp's misappropriation of this data allowed S&S to win Spirit Mountain's 2013 service contract in TSI's place, causing damages in the amount of TSI's lost profits.

Because summary judgment is denied as to TSI's claims for breach of contract and misappropriation of trade secrets, Defendants' motion is DENIED also as to TSI's claim for specific performance. In the event that TSI prevails on these claims, I cannot say at this stage of the proceedings that an order compelling Mr. Tharp to adhere to clause 8.a of the employment agreement will not be necessary to make TSI whole. Similarly, I cannot now say whether an order enjoining S&S from making use of TSI's trade secrets will not be required for the same purpose.

Defendants' motion is DENIED as to Defendants' counterclaims of defamation and breach of contract. Concerning the first and second counterclaims, Craig Swankosky admitted to relating to Steve Bobb and Tracy Howerton of Spirit Mountain his concerns with Mr. Tharp's performance and his suspicions of Mr. Tharp's involvement in a theft of TSI property. A reasonable jury could find that these statements were defamatory per se. However, each of these statements was made under privileged circumstances, because Mr. Swankosky made them in order to defend TSI's decision to terminate Mr. Tharp. Summary judgment in Defendants' favor is therefore inappropriate. Concerning the third counterclaim, a reasonable jury might conclude that Mr. Swankosky should have foreseen that Mr. Bobb and Mr. Howerton would republish his statements to Rusty Bossley of Three Rivers, but the evidence does not require this inference. Concerning the fourth, a reasonable jury could conclude that Mr. Swankosky's statements to Mr. Bobb and Mr. Howerton breached the employment agreement's nondisparagement provision.

However, a reasonable jury might also conclude that Mr. Tharp suffered no actual damages, making summary judgment inappropriate. Presumed damages are available only in actions for defamation per se, not in contract actions. Finally, concerning the fifth counterclaim, a reasonable jury could conclude that Mr. Swankosky made defamatory statements to Mr. Katnic of Synectics. However, because Mr. Swankosky denies making any statements at all to Mr. Katnic, a genuine dispute of material fact exists.

## II.     Plaintiff's Motion for Partial Summary Judgment

Because Defendants' motion for summary judgment as to Plaintiff's conversion claim is granted, Plaintiff's motion for judgment in its favor is DENIED.

Plaintiff's motion is GRANTED as to Defendants' first counterclaim. Mr. Swankosky's statements to Mr. Bobb and Mr. Howerton concerning issues with Mr. Tharp's performance were made in the interest of defending TSI's decision to terminate Mr. Tharp, and therefore are privileged. Further, no reasonable jury could conclude either that these statements lacked a reasonable basis in fact or that they were more defamatory than reasonably necessary.

Plaintiff's motion is DENIED as to Defendants' remaining counterclaims. Concerning the second, a reasonable jury might find that Mr. Swankosky's statements about Mr. Tharp's possible involvement in a theft of TSI equipment cast Mr. Tharp in a more suspicious light than reasonably necessary to defend TSI's decision to terminate him. As to the third, the record also permits a reasonable inference that Mr. Swankosky should have known that Mr. Bobb or Mr. Howerton would republish Mr. Swankosky's statements to Mr. Bossley. Regarding the fourth, a reasonable jury could find that Mr. Swankosky's statements violated the nondisparagement provision of Mr. Tharp's severance agreement, entitling Mr. Tharp at least to nominal damages. (*See* Am. Compl. Ex. 2 [46-2] at 2.) Fifth and finally, Mr. Swankosky's statements to Mr.

5 – OPINION AND ORDER

Katnic are privileged because they were made to further TSI's and Synectics's mutual interest in refraining from working with a potential thief. However, a reasonable jury might find that Mr. Swankosky's assertions that Mr. Tharp was under investigation and would never work in Oregon again were more defamatory than reasonably necessary.

IT IS SO ORDERED.

DATED this   30th   day of April, 2014.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

6 – OPINION AND ORDER